# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **BILLNAT CORPORATION** | ) Case No. 17-54357 |
| | ) |
| Debtor. | ) |
| | ) Judge Maria L. Oxholm |
| | ) |
| | ) |

## MOTION OF THE DEBTOR FOR AN ORDER (I) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTOR'S VEHICLES AND FURNITURE, FIXTURES, AND EQUIPMENT FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) GRANTING RELATED RELIEF

The above-captioned debtor and debtor in possession (the "Debtor") hereby moves the Court, pursuant to sections 105, 363(b), and 365(a) of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 6004 and of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the Eastern District of Michigan (the "Local Rules"), for the entry of an order, substantially in the form attached hereto as Exhibit A, authorizing the Debtor to sell certain of its vehicles (identified on Exhibit C, the "Vehicles") and the furniture, fixtures, and equipment at the "File Buy Locations" where the Debtor still has lease obligations (the "FF&E" and together with the Vehicles, the "Sale Assets") to Hilco Fixture Finders, LLC ("Hilco"), free and clear of all liens, claims, encumbrances, and

interests and granting related relief.   In support of this Motion, the Debtor respectfully states as follows:

<h2 style="text-align:center">JURISDICTION AND VENUE</h2>

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Debtor's chapter 11 case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

<h2 style="text-align:center">BACKGROUND</h2>

2.    On October 13, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is continuing in possession of its property and is operating and managing its businesses as a debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.    An official committee of unsecured creditors has been appointed in this chapter 11 case ("Committee").

4.    The Debtor was in the business of operating twenty retail pharmacies from leased facilities in Southeastern Michigan under the name "Sav-On Drugs". The Debtor's corporate headquarters is located in Livonia, Michigan.

5.    Most recently, the Debtor has been working to conclude the final tranche of closings of the sale of its remaining locations to Woodward Detroit

CVS Pharmacy, LLC ("CVS"), which are scheduled for January 12, 2018, as previously approved by the Order Authorizing the Sale to CVS [Docket No. 201] (the "CVS Sale Order").

6.     While CVS did purchase most of Debtor's assets, certain assets were excluded, including the Sale Assets.

7.     Detailed facts about the Debtor and the reasons for the commencement of the chapter 11 case are set forth in the *Affidavit and Statement of Jeffrey K. Tischler in Support of Chapter 11 Petition and First Day Motions* [Docket No. 12] (the "Tischler Affidavit").

## FACTS RELEVANT TO THIS MOTION

8.     Following the sale of the bulk of its assets to CVS as authorized by the CVS Sale Order (the "CVS Sale"), Debtor will still hold title to and possession of the Sale Assets.

9.     In connection with the CVS Sale, Debtor is being provided reimbursement during the 90 days following the first tranche of closings with CVS[1] for the majority of its costs and expenses (the "Lease Reimbursement") associated with the leases for each of Debtor's leased premises (the "Premises")

---

[1] The first tranche of closings with CVS occurred on December 5, 2017.

that were identified as "Go-Dark File Buy Locations" in Debtor's agreements with CVS.[2]

10.    The Lease Reimbursement covers the majority of Debtor's costs associated with the leases for the various Premises until March 5, 2018, after which time Debtor intends to reject most if not all of the leases for the various Premises to minimize accruing additional administrative expenses in connection with such leases.

11.    In addition to looking for an efficient way to sell the Vehicles, Debtor has also been looking at different alternatives for removing the FF&E from its various leased Premises in order to determine if it could do so in a manner that would benefit the Debtor's estate by (i) reducing the possible amount of claims that could be asserted by landlords for remediation of the various leased premises, (ii) obtaining fair and reasonable monetary value from the Sale Assets, and (iii) avoid the necessity for Debtor to motion the Court for individual sales for each of the Sale Assets and the added expenses of having to motion the Court for each such sale given the relatively *di minimus* value of the individual assets comprising the Sale Assets.

---

[2] The File Buy Locations that were leased from entities owned or controlled by William Newman were excepted from the locations that were identified as Go-Dark File Buy Locations entitled to the Lease Reimbursement.

12.    The proposed terms of the sale to Hilco (attached hereto as <u>Exhibit B</u>, the "<u>Hilco Agreement</u>") provide the best alternative for Debtor to accomplish each of these aforementioned goals.

13.    In accordance with the Hilco Agreement, upon entry of an order granting this Motion, Hilco has agreed to pay the Debtor $86,500.00 (subject to certain adjustments as described in further detail below) (the "<u>Base Purchase Price</u>") in exchange for title to the Sale Assets.  Pursuant to the Hilco Agreement, the parties agreed to the following additional terms:[3]

- The term of the Hilco Agreement ends February 28, 2018 for the leased locations (the "<u>Conclusion Date</u>"), unless the Debtor and Hilco mutually agree to an extension.

- During the term of the Hilco Agreement, Hilco has the exclusive right to resell, dispose of, and remove the FF&E from each of the Premises.

- During the term of the Hilco Agreement, (i) Hilco and the purchasers of the FF&E, and their respective representatives, shall have unlimited access to the Premises in order to allow Hilco to sell, dispose of, and/or remove the FF&E; and (ii) the Debtor will use its reasonable efforts to cooperate with Hilco in connection with the sale, disposition, and removal process.

- No later than 30 days after the Conclusion Date, Hilco will pay the Debtor 50% of all Gross Proceeds in excess of $260,000.00 (the "<u>Additional Purchase Price</u>" and together with the Base Purchase Price, the "<u>Purchase Price</u>").  Gross Proceeds is defined as "all proceeds from the sale or other disposition of the FF&E, including (without limitation) all proceeds from scrap sales or dispositions, all commissions, and all buyer's premiums."

---

[3] To the extent there is any disagreement between the summary of terms referenced herein and the Hilco Agreement, the Hilco Agreement shall govern.

- Hilco shall bear its costs and expenses associated with reselling, disposing of, or removing the FF&E from the Facility and ensuring that each location, to the extent notice is provided as set forth in the Hilco Agreement, is left in a "broom cleaned" condition, including costs and expenses associated with labor, advertising, dumpsters, travel, material handling, packing, supplies, and shipping.

- The Hilco Agreement also provides that Hilco will be entitled to the Walk In Credit (for removal of walk in coolers from the Premises, the "Walk in Credit") and the Broom Sweep Credit (for remediation of the Premises to broom swept condition, the "Broom Sweep Credit") identified for each of the locations as set forth in Section 2 of the Hilco Agreement.

## RELIEF REQUESTED

14.    The Debtor respectfully requests that the Court: (a) authorize the Debtor to sell the Sale Assets to Hilco pursuant to the Hilco Agreement free and clear of all liens, claims, encumbrances, or other interests pursuant to sections 363(b), (f), and (m) and 365 of the Bankruptcy Code, with such liens, claims, rights, interests, and encumbrances to attach to the sale proceeds of the Sale Assets with the same validity, priority, extent, and perfection as existed immediately prior to such sale and grant related relief.

## BASIS FOR RELIEF

### A.    The Debtor's Entry Into the Hilco Agreement is a Proper Exercise of Its Business Judgment

15.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."    11 U.S.C. § 363(b)(1).

Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

16. In approving the sale of assets outside the ordinary course of business and outside of a chapter 11 plan pursuant to section 363 of the Bankruptcy Code, courts, including those in the Sixth Circuit, have adopted the "sound business reason" test established by the Second Circuit in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983). *See Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *In re Nicole Energy Servs., Inc.*, 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008); *In re Jillian's Entm't Holdings*, 327 B.R. 616, 617 (Bankr. W.D. Ky. 2005) (stating that the *Lionel* standard has been adopted by the vast majority of courts); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of a debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith).

17. A debtor's showing of sound business justification need not be unduly exhaustive; instead the debtor or trustee is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business

reasons to justify a sale depends upon the facts and circumstances of each case. *See Lionel*, 722 F.2d at 1071. Bankruptcy courts are given substantial discretion in deciding whether to authorize a sale of a debtor's assets outside of the ordinary course of business. *See In re Chateaugay Corp.*, 973 F.2d 141, 144 (2d Cir. 1992).

18. The Debtor believes that the sale of the Sale Assets to Hilco represents a prudent and proper exercise of its business judgment and is in the best interests of the Debtor's creditors and its estate. Specifically, in addition receiving the Purchase Price the Debtor's estate also receives the added benefit of mitigating claims for damages by the landlords for the various Premises due to Hilco remediating the Premises to a "broom swept" condition as is required by the leases for the various Premises, which is estimated by Debtor to be substantially more than the amount the Broom Sweep Credit Hilco receives for providing such services. Additionally, the Hilco Agreement provides significant upside to the Debtor's estate in the event Hilco, a highly experienced liquidator, sells the FF&E for greater than $260,000. Finally, in order to obtain the remaining benefits of the Hilco Agreement, the Debtor need only grant access to the Premises to Hilco and the third-party purchasers.

19. Moreover, no prejudice will result to any parties in interest because the sale of the Sale Assets is being noticed in accordance with the notice provisions established by the Bankruptcy Rules. Such notice: (a) affords all parties in interest

with adequate and reasonable notice of the sale; (b) provides sufficient information regarding the sale of the Sale Assets and the time for filing objections to the sale; and (c) meets the requirements of the Bankruptcy Code, the Bankruptcy Rules, and legal due process.

20.     Therefore, the Debtor believes that the proposed sale is the best restructuring choice currently available for the estate and concludes that the sale is supported by sound business reasons.

**B.      The Sale of the Sale Assets Satisfies the Requirements of Section 363(f) of the Bankruptcy Code for a Sale Free and Clear of Liens, Claims, and Interests**

21.     Section 363(f) of the Bankruptcy Code authorizes the sale of estate property free and clear of interests in such property held by an entity if:

    (1)    applicable nonbankruptcy law permits a sale of such property free and clear of such interest;

    (2)    such entity consents;

    (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (4)    such interest is in bona fide dispute; or

    (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see generally In re Leckie Smokeless Coal Co*., 99 F.3d 573 (4th Cir. 1996); *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 506 (Bankr.

N.D. Ala. 2002). The "interests" in property that assets may be sold "free of" include liens, claims, encumbrances, and other interests. *See Leckie Smokeless*, 99 F.3d at 581-582 (scope of section 363(f) not limited to in rem interests); *In re Aneco Elect. Const*., *Inc*., 377 B.R. 338 (Bankr. M.D. Fla. 2006); *see also In re Appalachia Fuels, LLC*, 503 F.3d 538 (6th Cir. 2007) (approving a sale free and clear of "claims" arising as coal commission sales).

22.     Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Sale Assets "free and clear" of all liens, claims, encumbrances, and interests. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).

23.     The Debtor believes that only the Lenders assert liens on the FF&E and no parties assert liens on the Vehicles. The Debtor submits that one or more of the conditions set forth in section 363(f) of the Bankruptcy Code will be satisfied with respect to the sale of the Sale Assets as to the Lenders, or any other party that may assert a lien on the Sale Assets. In particular, the Debtor submits that any party holding a lien will be adequately protected by having its liens, if any, attach to the proceeds of the sale, in the same order of priority, with the same validity, force, and effect that such creditor had prior to the sale, subject to any claims and

defenses that the Debtor and its estate may possess with respect thereto. The Debtor accordingly requests authority to convey the Sale Assets to Hilco, free and clear of all liens and encumbrances, with such liens and encumbrances to attach to the proceeds from the sale of the Sale Assets, with the same validity, extent, priority, and perfection as existed immediately prior to the sale.

24.    Lastly, the Debtor submits that the sale should not expose Hilco to any liability as a successor of the Debtor or its estate. Courts have also consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free and clear from successor liability relating to the debtor's business. *See, e.g., In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003) (sale of assets pursuant to section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program); *In re Leckie Smokeless Coal Co.*, 99 F.3d at 585 (affirming the sale of debtors' assets free and clear of certain taxes); *In re Insilco Techs., Inc.*, 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory); *see also In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[I]n personam claims, including any potential state successor or transferee liability claims against New Chrysler, as well as in rem interests, are encompassed by section 363(f) and are therefore extinguished by the Sale Transaction.").

25.     Accordingly, the Court should approve the sale of the Sale Assets to Hilco free and clear of liens and encumbrances under section 363(f) of the Bankruptcy Code, and all potential claimants should be compelled to look exclusively to the proceeds of the sale for satisfaction of their claims.

## C.     Hilco Constitutes a Good Faith Purchaser Subject to the Protections of Section 363(m) of the Bankruptcy Code

26.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(n) of the Bankruptcy Code, among other things, provides, in turn, that a trustee may avoid a sale under such section if the sale price was controlled by an agreement among potential bidders at the sale.  Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'." *In re Abbott's Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986); *See also In re Made In Detroit, Inc.*, 414 F.3d 576, 581 (6th Cir. 2005) (following the *Abbotts Dairies* standard).

27.     The Hilco Agreement entered into between the Debtor and Hilco is the product of good faith and free from self-dealing.  The Hilco Agreement was

negotiated, arm's length transaction, in which Hilco has acted in good faith, without collusion or fraud of any kind, and in compliance with the *Abbotts Dairies* standard. Further, neither the Debtor nor Hilco has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or allow the Debtor to avoid the sale pursuant to section 363(n) of the Bankruptcy Code.

28.    In light of the foregoing, the Debtor requests that the Court find that Hilco will have purchased the Sale Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code, and is entitled to the protections of section 363(m) of the Bankruptcy Code.

## WAIVER OF RULES 6004 AND 6006

29.    Notwithstanding the possible applicability of 6004 and 6006 of the Bankruptcy Rules or otherwise, the Debtor requests the relief sought by this Motion be immediately effective and enforceable upon entry of the order requested hereby. In order to allow the immediate realization of value for the Sale Assets, the Debtor requests that any order grating this Motion is effective immediately and not subject to the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

30.    Notice of this Motion has been served on the following parties or, in lieu thereof, to their counsel, if known: (i) the United States Trustee for the Eastern District of Michigan; (ii) those parties listed on the Debtor's limited service list

approved by the Court; (iii) the Debtor's prepetition secured lenders; (iv) the Debtor's state, local, and federal taxing authorities; (v) counsel for the Committee, and (vi) the landlords for the Premises. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice need be given.

## **NO PRIOR REQUEST**

31.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order substantially in form attached hereto as Exhibit A: (i) approving the Hilco Agreement and authorizing the Debtor to sell the Sale Assets to Hilco free and clear of all liens, claims, encumbrances, and interests; and (ii) granting such other and further relief as the Court may deem proper.


**[Remainder of Page Intentionally Left Blank]**

Respectfully submitted,

/s/ Jayson B. Ruff _____
Stephen M. Gross (P35410)
Jayson B. Ruff (P69893)
McDONALD HOPKINS PLC
39533 Woodward Avenue, Suite 318
Bloomfield Hills, MI  48304
Telephone: (248) 646-5070
Facsimile:  (248) 646-5075
E-mail: sgross@mcdonaldhopkins.com
           jruff@mcdonaldhopkins.com

COUNSEL FOR DEBTOR
AND DEBTOR IN POSSESSION

Dated:  January 12, 2018

**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **BILLNAT CORPORATION** | ) Case No. 17-54357 |
| | ) |
| Debtor. | ) |
| | ) Judge Maria L. Oxholm |
| | ) |
| | ) |

## ORDER (I) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTOR'S VEHICLES FURNITURE, FIXTURES, AND EQUIPMENT FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) GRANTING RELATED RELIEF

This matter coming before the Court on the Motion of the Debtor for an Order (I) Authorizing the Sale of Certain of the Debtor's Vehicles Furniture, Fixtures, and & Equipment Free and Clear of All liens, Claims, Encumbrances, and Interests; and (II) Granting Related Relief (the "Motion"),[1] filed by the above-captioned debtor and debtor in possession (the "Debtor"); the Court having reviewed the Motion and having heard statements of counsel in support of the Motion at a hearing before the Court; the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) venue of the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Debtor's chapter 11 case and the Motion is proper under 28 U.S.C. §§ 1408 and 1409; (d) service and notice of the Motion was sufficient under the circumstances; and (e) the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein:

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A. **<u>Findings and Conclusions</u>**. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. **<u>Statutory Predicates</u>**. The statutory predicates for the relief requested in the Motion are sections 105, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rule 6004-1.

C. **<u>Opportunity to Object</u>**. A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

D. **<u>Title to the Sale Assets</u>**. The Sale Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.

E.     **Business Justification**.    The Debtor has demonstrated a sufficient basis and compelling reasons for entering into the Hilco Agreement and selling the Sale Assets pursuant to section 363 of the Bankruptcy Code.   Such action is an appropriate exercise of the Debtor's business judgment and in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.   Such business reasons include, but are not limited to, the fact that (i) the Hilco Agreement constitutes the highest or otherwise best offer for the Sale Assets; (ii) the sale will present the best opportunity to realize the value of the Debtor's interest in the Sale Assets; (iii) unless the sale is concluded expeditiously as provided for in the Motion and pursuant to the Hilco Agreement, potential creditor recoveries may be substantially diminished.   Entry of an order approving the Hilco Agreement and all provisions thereof is a necessary condition precedent to closing the sale.

F.     **Highest or Otherwise Best Offer**.   The total consideration provided by Hilco for the Sale Assets is the highest or otherwise best offer received by the Debtor.

G.     **Good Faith Purchaser**.     The Hilco Agreement and the sale contemplated thereby have been negotiated by the Debtor and Hilco in good faith, at arm's length, and without collusion or fraud.   The terms and conditions of the Hilco Agreement and the sale, including the total consideration to be realized by the Debtor pursuant to the Hilco Agreement, are fair and reasonable, and the sale is

in the best interest of the Debtor, its creditors, and its estate. Hilco is a "good faith purchaser" of the Sale Assets, entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code with respect to the sale and transfer of the Sale Assets. The terms defined in the Hilco Agreement are incorporated by reference in this Order.

H.     The Hilco Agreement was not controlled by an agreement between potential or actual bidders within the meaning of section 363(n) of the Bankruptcy Code. The Debtor and Hilco have not engaged in any conduct that would cause or permit the Hilco Agreement to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. Hilco is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.

I.     Hilco will be acting in good faith in consummating the sale at any time on or after entry of this Order, and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d). Hilco is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

J.     **Corporate Power and Authority**. Subject to entry of this Order, the Debtor and Hilco have full corporate power and authority to execute and deliver the Hilco Agreement and to perform all of their respective obligations thereunder, and the sale and transfer of the Sale Assets has been duly and validly authorized by

all corporate authority necessary to consummate the sale. No consents or approvals, other than as expressly provided for in the Hilco Agreement and the entry of this Order, are required by the Debtor to consummate the sale.

K.  **Free and Clear**.  The sale and the transfer of the Sale Assets to Hilco will be, as of the closing of the sale ("Closing"), a legal, valid, and effective transfer of such assets, and each such transfer vests or will vest Hilco with all right, title, and interest of the Debtor to Hilco free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code), interests, and encumbrances (collectively, "Liens, Claims, and Encumbrances") with any Liens, Claims, and Encumbrances to attach to the consideration to be received by the Debtor in the same priority and subject to the same defenses and avoidability, if any, as of the Closing.  Hilco would not enter into the Hilco Agreement to acquire the Sale Assets if the sale of the Sale Assets was not free and clear of all Liens, Claims, and Encumbrances, or if Hilco would, or in the future could, be liable for any such Liens, Claims, and Encumbrances.  A sale of the Sale Assets, other than one free and clear of all Liens, Claims, and Encumbrances, would adversely impact the Debtor's estate, and would likely yield substantially less value for the Debtor's estate, with less certainty than the sale.  Therefore, the sale contemplated by the Hilco Agreement is in the best interests of the Debtor, its estate and creditors, and all other parties in interest.

L.    **Satisfaction of 363(f) Standards**.    The Debtor may sell the Sale Assets free and clear of all Liens, Claims, and Encumbrances, because, with respect to each creditor asserting a Lien, Claim, and Encumbrance, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.    Those holders of Liens, Claims, and Encumbrances who did not object or who withdrew their objections to the Motion are deemed to have consented to the Motion and sale of the Sale Assets to Hilco pursuant to section 363(f)(2) of the Bankruptcy Code.    Those holders of Liens, Claims, and Encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, Claims, and Encumbrances, if any, attach to the proceeds of the sale ultimately attributable to the Sale Assets in which such holders allege a Lien, Claim, and Encumbrance, in the same order of priority, with the same validity, force and effect that such holder had prior to the sale, and subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

M.    The sale contemplated under the Hilco Agreement does not amount to a consolidation, merger, or de facto merger of Hilco and the Debtor and/or the Debtor's estate; there is not substantial continuity between Hilco and the Debtor; there is no common identity between the Debtor and Hilco; there is no continuity of enterprise between the Debtor and Hilco; Hilco is not a mere continuation of the

6

Debtor or its estate; and Hilco does not constitute a successor to the Debtor or its estate. Except as provided by the terms of the Hilco Agreement, Hilco and its affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtor, subject to the terms of the Hilco Agreement.

N. **No Fraudulent Transfer**. The sale is not for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtor nor Hilco are or will be entering into the Hilco Agreement fraudulently.

O. **Fair Consideration**. The consideration for the sale constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. The Hilco Agreement represents a fair and reasonable offer to purchase the Sale Assets under the circumstances of the Debtor's case. Approval of the Hilco Agreement and the consummation of the sale are in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

P.    **Assumption of the Hilco Agreement**.  The Debtor has satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A) and (B), in connection with the assumption of the Hilco Agreement.  The Debtor has demonstrated adequate assurance of future performance with respect to the Hilco Agreement pursuant to section 365(b)(1)(C) of the Bankruptcy Code.  The assumption of the Hilco Agreement is in the best interests of the Debtor, its estates, its creditors, and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtor.

Q.    **Compliance with Bankruptcy Code.**  The consummation of the sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation sections 105(a), 363(b), 363(f), 363(m), and 365(b) of the Bankruptcy Code and all of the applicable requirements of such sections have been or will be complied with in respect of the sale as of the Closing.

R.    **Sale Not a Sub Rosa Plan**.  The sale of the Sale Assets outside of a plan of reorganization pursuant to the Hilco Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor.  The sale does not constitute a *sub rosa* chapter 11 plan.

S.    **Time is of the Essence**.  Time is of the essence in consummating the sale.  In order to maximize the value of the Debtor's assets, it is essential that the sale occur within the time constraints set forth in the Hilco Agreement.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

T.    The sale contemplated by the Hilco Agreement and the assumption of the Hilco Agreement by the Debtor is in the best interests of the Debtor and its estate, creditors, interest holders and all other parties in interest herein; and

**IT IS HEREBY ORDERED THAT:**

1.    **Relief Granted**.  The Motion shall be, and hereby is, GRANTED in its entirety, subject to the terms of this Order.

2.    **Objections Overruled**.  All objections and responses to the Motion, this Order, the sale, or the relief granted herein that have not been overruled, withdrawn, waived, settled, or otherwise resolved, are hereby overruled and denied on the merits with prejudice.

3.    **Approval**.  The Hilco Agreement and the sale are hereby approved and authorized in all respects, and the Debtor is hereby authorized and empowered to enter into, and to perform its obligations under, the Hilco Agreement and to execute and perform such agreements or documents, and take such other actions as are necessary or desirable to effectuate the terms of the Hilco Agreement.

4.     __Good Faith Purchaser__.  Hilco is a good faith purchaser of the Sale Assets and is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code.  Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer, or assignment under the Hilco Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification, or vacatur, any sale, transfer, or assignment shall be governed in all respects by the original provisions of this Order or the Hilco Agreement, as the case may be.

5.     __Section 363(n) of the Bankruptcy Code__.  The sale approved by this Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) of the Bankruptcy Code.

6.     __Authorization of Performance by the Debtor__.  The Debtor and its managers, officers, employees, agents, and representatives are authorized to fully perform under, consummate, and implement the terms of the Hilco Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Hilco Agreement, this Order, and the sale, including, without limitation, deeds,

assignments, and other instruments of transfer, and to take all further actions as may reasonably be requested by Hilco for the purpose of assigning, transferring, granting, conveying, and conferring to Hilco, or reducing to possession any or all of the Sale Assets, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Hilco Agreement, without any further corporate action or orders of the Court.

7. Hilco and the Debtor shall have no obligation to proceed with the Closing until all conditions precedent to their respective obligations to do so have been met, satisfied, or waived as set forth on the Hilco Agreement.

8. **Valid Transfer**. Effective as of the Closing, the sale of the Sale Assets by the Debtor to Hilco shall constitute a legal, valid, and effective transfer of the Sale Assets notwithstanding any requirement for approval or consent by any person and vests Hilco with all right, title, and interest of the Debtor in and to the Sale Assets, free and clear of all Liens, Claims, and Encumbrances, pursuant to section 363(f) of the Bankruptcy Code.

9. **Free and Clear**. Upon the Closing, the Debtor shall be, and hereby is, authorized and empowered, pursuant to sections 105, 363(b), and 363(f) of the Bankruptcy Code, to sell the Sale Assets to Hilco. The sale of the Sale Assets to Hilco vests Hilco with all right, title, and interest of the Debtor to the Sale Assets free and clear of any and all Liens, Claims, and Encumbrances, with all such Liens,

Claims, and Encumbrances to attach only to the proceeds of the Sale Assets with the same priority, validity, force, and effect as they now have in or against the Sale Assets. The Motion shall be deemed to provide sufficient notice as to the sale and assignment of the Sale Assets free and clear of all Liens, Claims, and Encumbrances in accordance with Local Rule 6004-1. Following the Closing, no holder of any Lien, Claim, and Encumbrance on the Sale Assets may interfere with Hilco's use and enjoyment of the Sale Assets based on or related to such Lien, Claim, and Encumbrance, and no interested party may take any action to prevent, interfere with, or otherwise enjoin consummation of the sale.

10.     The provisions of this Order authorizing the sale of the Sale Assets free and clear of Liens, Claims, and Encumbrances shall be self-executing, and neither the Debtor nor Hilco shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.

11.     **Direction to Creditors**.  On the date of the Closing (the "Closing Date"), each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Claims, and Encumbrances in the Sale Assets, if any, as such Liens, Claims, and Encumbrances may otherwise exist.

12.  **Direction to Surrender Possession or Control**.  All persons or entities, currently or on or after the Closing Date, in possession or control of some or all of the Sale Assets are directed to surrender possession or control of the Sale Assets to Hilco on the Closing Date or at such time thereafter as Hilco may request.

13.  **Transfer of Title and Interests**.  All of the Debtor's interests in the Sale Assets to be acquired by Hilco under the Hilco Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in Hilco.  Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Sale Assets acquired by Hilco under the Hilco Agreement and/or a bill of sale or assignment transferring indefeasible title and interest in the Sale Assets to Hilco.

14.  Without limiting the effect or scope of the foregoing, except as otherwise in the Hilco Agreement, as of the Closing Date, Hilco and its affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown as of the Closing Date, now

existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the Sale Assets prior to the Closing.

15. Nothing in this Order or the Hilco Agreement releases, nullifies, precludes, or enjoins the enforcement of any environmental liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or the Hilco Agreement authorizes the transfer or assignment to Hilco of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without Hilco's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

16. **Injunction**. Except to the extent expressly intended to enforce the Hilco Agreement, all persons and entities, including, but not limited to, the Debtor, employees, former employees, all debt security holders, administrative agencies, governmental tax and regulatory authorities, secretaries of state, federal, state and local officials, lenders, contract parties, bidders, lessors, warehousemen, customs brokers, freight forwarders, carriers, and other parties in possession of any of the Sale Assets at any time, trade creditors and all other creditors, holding Liens,

Claims, and Encumbrances of any kind or nature whatsoever against or in the Debtor or in the Debtor's interests in the Sale Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Sale Assets, the sale, or the transfer of the Sale Assets to Hilco, shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing such Lien, Claim, and Encumbrance, in any manner, in any action, claim, or other proceeding of any kind, directly or indirectly, against Hilco, or any affiliates, successors or assigns thereof, their property or the Sale Assets on account of the purchase of the Sale Assets. Following the Closing Date, no holder of a Lien, Claim, and Encumbrance shall interfere with Hilco's title to or use and enjoyment of the Sale Assets based on or related to such Lien, Claim, and Encumbrance. For the avoidance of doubt, none of the foregoing shall prevent the Debtor, its estate, and its successors or assigns from pursuing claims, if any, against Hilco and/or its successors and assigns for any breach of the Hilco Agreement to the extent permitted thereby.

17. Except as provided in the Hilco Agreement, Hilco has not assumed and is not otherwise obligated for any of the Debtor's liabilities. Consequently, all persons, Governmental Units (as defined in section 101(27) of the Bankruptcy

Code) and all holders of Liens, Claims, and Encumbrances, based upon or arising out of liabilities retained by the Debtor, are hereby enjoined from taking any action against Hilco or the Sale Assets, including asserting any setoff, right of subrogation, or recoupment of any kind, to recover any Liens, Claims, and Encumbrances or on account of any liabilities of the Debtor. All persons holding or asserting any Lien, Claim, and Encumbrance on the Sale Assets on account of liabilities of the Debtor are hereby enjoined from asserting or prosecuting such Liens, Claims, and Encumbrances or cause of action against Hilco or the Sale Assets for any such liability.

18. **No Bulk Sales**. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the Sale Assets.

19. **Assumption of Hilco Agreement**. The Debtor is hereby authorized to assume the Hilco Agreement pursuant to section 365(a) of the Bankruptcy Code.

20. **Amendments**. Subject to the terms of the Hilco Agreement, the Hilco Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtor and Hilco, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Hilco Agreement and any related agreements. Any material modification, amendment, or supplement to the Hilco Agreement must be

approved by Order of the Court following a motion on notice to all interested parties.

21.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Hilco Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtor, and Hilco that the Hilco Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order.  Likewise, all of the provisions of this Order are non-severable and mutually dependent.

22.    **Binding Order**.    This Order and the Hilco Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtor and Hilco, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtor's estate or any trustee appointed in a chapter 7 case if the Debtor's case is converted from chapter 11 to a chapter 7 proceeding, all creditors of the Debtor (whether known or unknown), all non-Debtor parties to any contracts, filing agents, filing officers, title agents, recording agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or

instruments or who may be required to report or insure any title in or to the Sale Assets. The Hilco Agreement and sale shall not be subject to rejection or avoidance under any circumstances. This Order and the Hilco Agreement shall inure to the benefit of the Debtor, its estate, its creditors, Hilco and their respective successors and assigns.

23. **No Stay of Order**. Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. Time is of the essence in closing the sale referenced herein, and the Debtor and Hilco intend to close the sale as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

24. **Lift of Automatic Stay**. If and to the extent that section 362 may be applicable to a particular action in connection with the Hilco Agreement and sale, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Court, to allow Hilco to deliver any notice provided for in the Hilco Agreement and allow Hilco to take any and all actions permitted under the Hilco Agreement in accordance with the terms and conditions thereof.

25. **Retention of Jurisdiction**. The Court shall retain jurisdiction to (a) interpret, implement, and enforce the terms and provisions of this Order and the

Hilco Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects, (b) to decide any disputes concerning this Order and the Hilco Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Hilco Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Sale Assets, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, Claims, and Encumbrances.

26.     **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan confirmed in the Debtor's chapter 11 case or any order confirming any such plan or any other order in the chapter 11 case of the Debtor (including any order entered after any conversion of the Debtor's case into a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with or derogate from, the provisions of the Hilco Agreement or this Order.

27.     **Further Assurances**.  From time to time, as and when requested by any party to the Hilco Agreement, and subject to the terms of such Hilco Agreement, each such party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary

or desirable to consummate the sale, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in Hilco its right, title, and interest in and to the Sale Assets.

28.  **<u>Governing Terms</u>**.  To the extent this Order is inconsistent with any prior order or pleading in the chapter 11 case, the terms of this Order shall govern. To the extent there is any inconsistency with between the terms of this Order and the terms of the Hilco Agreement (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

# **Exhibit B**

Hilco Agreement



January 11, 2018

Billnat Corporation
c/o Conway McKenzie
401 S. Old Woodward Ave Suite 340
Birmingham, MI 48009

**Re:    Furniture, Fixtures & Equipment Purchase Agreement**

Dear Mr. Tischler,

This letter constitutes an agreement and bill of sale (this "Agreement") between Hilco Fixture Finders, LLC ("Hilco FF" or a "Party") and Billnat Corporation, debtor and debtor-in-possession (the "Company" or a "Party" and together with Hilco FF, the "Parties"), in that certain chapter 11 case, Case No. 17-54357 (the "Bankruptcy Case"), pending before the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"), for Hilco FF to purchase all FF&E (as defined below) at the Location(s) (as defined below) and resell, dispose of, and remove such FF&E from such Location(s).  The specific terms and conditions of the Parties' agreement are as follows:

1.  Certain defined terms:

    a.  "Location(s)" means the location or locations set forth on Exhibit A.

    b.   "FF&E" means all furniture, trade fixtures, and equipment, including (without limitation) all shelving, display racks, storage shelving, office furniture, break room fixtures and equipment, material handling equipment, service and checkout counters, Slurpee machines, vehicles, refrigeration equipment (including electrical wiring and copper lines servicing such equipment), safes, the generator at the corporate office, and the items listed on Exhibit B.  FF&E expressly excludes all permanent lighting, walk-in-coolers (unless notice is provided pursuant to Section 2 below), plumbing fixtures and doors and windows (such exclusions, the "Excluded Fixtures").

    c.  "Proceeds" means all proceeds from the sale or other disposition of the FF&E, including (without limitation) all proceeds from scrap sales or dispositions, all commissions, and all buyer's premiums.

    d.  "Sale Approval Order" means a final, non-appealable order of the Bankruptcy Court, in form and substance acceptable to Hilco FF acting reasonably, approving the terms of this Agreement and the sale of the FF&E to Hilco FF free and clear of all liens, claims and encumbrances, which Sale Approval Order must be entered on or before February 1, 2018, unless otherwise agreed to in writing by Hilco FF.

A Hilco Global Company

e. "Term" means the period commencing on the date the Bankruptcy Court enters the Sale Approval Order (the "Commencement Date") and ending on the date that is identified on Exhibit A for each Location (each, the "Conclusion Date") unless mutually extended by the Parties.

2. The Company represents and warrants that the FF&E is, and agrees to sell Hilco FF the FF&E free and clear of all security interests, liens, claims and encumbrances, and the Company shall be responsible for clearing title to the FF&E at the Company's sole cost and expense. As consideration for the purchase of the FF&E and the right to resell, dispose of, and remove the FF&E and the other terms and conditions of this Agreement, Hilco FF agrees to pay the Company $81,500.00 (the "Purchase Price"), subject to the following adjustments: (i) on or before the entry of the Sale Approval Order, the Company shall notify Hilco FF of any walk-in-coolers that must be removed from the Location(s) and Hilco shall receive a $1,000 credit against the Purchase Price for each such walk-in-cooler that needs to be removed; and (ii) on or before the entry of the Sale Approval Order, the Company shall notify Hilco FF of any Location(s) that need to be left in broom swept condition and Hilco shall receive a $1,250 credit ($7,500 for the corporate office) against the Purchase Price for each such Location that needs to be broom swept. No later than 24 hours after entry of the Sale Approval Order, Hilco FF shall pay the Company a deposit equal to $40,750.00 (the "Deposit"). No later than two (2) business days after Hilco FF gains access to the Location(s) and is permitted to and does verify the FF&E therein, Hilco FF agrees to pay the Purchase Price, less the Deposit, any credits set forth above and less the fair market value of any FF&E that is no longer present at the Location(s) upon verification by Hilco FF. If a payment date falls on a weekend or holiday after it is possible to wire funds electronically, the payment shall be made on the next business day.

3. Subject to and effective upon the entry of the Sale Approval Order and ending on the Conclusion Date, the Company grants to Hilco FF the exclusive right to resell, dispose of, and/or remove the FF&E, and from and after the date hereof, the Company agrees not to (or grant any other party the right to) sell, dispose of, and/or remove any of the FF&E. Hilco FF shall be entitled to retain all Proceeds for its sole and exclusive benefit until such Proceeds total $260,000 (exclusive of sales taxes), over which amount the Parties shall split Proceeds 50/50.

4. To the extent the resale, disposition, or removal of the FF&E requires any electrical or plumbing disconnects, such electrical and plumbing disconnects shall be done in a safe and workmanlike manner and shall be capped (in the case of electrical, generally to the closest junction box).

5. Prior to expiration of the Term, Hilco FF shall have no obligation to leave the Location(s) in broom cleaned condition except to the extent notified by the Company as set forth above in Section 2. Hilco FF shall not remove any Excluded Fixtures. Hilco FF shall have the right to consolidate and/or marshal FF&E from Location to Location, including to the corporate office Location, and shall be entitled to abandon any unsold FF&E at any Location that does not need to be broom swept.

A Hilco Gl...
Vested in Your Success

6. Prior to expiration of the Term, Hilco FF shall repair any damage (ordinary wear and tear excepted) caused by Hilco FF to the Location(s) from the removal of the FF&E, which repair obligation includes filling holes in wallboard upon removal of fasteners; provided, however, that, for the avoidance of doubt, the foregoing repair obligation does not include the obligation to repair any pre-existing damage that is discovered during the Term as a result of the FF&E resale/disposition/removal process contemplated by this Agreement or damage caused by the Company or non-Hilco FF Parties (as defined below).

7. Upon expiration of the Term, Hilco FF shall photo-document the interior condition of the Location(s) and the exterior perimeter of the Location(s). No later than thirty (30) days after expiration of the Term, Hilco FF shall provide the Company with electronic files of the photographs of the Location(s).

8. Hilco FF shall bear its costs and expenses associated with reselling, disposing of, or removing the FF&E from the Location(s), including costs and expenses associated with labor, advertising, dumpsters, travel, material handling, packing, supplies, and shipping.

9. The Company hereby agrees to place two (2) FF&E sale signs and a FF&E lead generation ballot box with lead generation forms (all of which shall be supplied by and delivered to the Location(s) by Hilco FF) in the Location(s) for the purpose of generating sales leads for the FF&E. The Company agrees that the signs, ballot box, and completed and blank forms shall remain at the Location(s) until turned over to the Hilco FF representatives on the Commencement Date.

10. During the Term, at no cost to Hilco FF, the Company agrees to: (a) allow Hilco FF and the purchasers of the FF&E and, in each case, their subcontractors, agents, and representatives unlimited access to the Location(s) seven days per week in order allow Hilco FF to sell, dispose of, and/or remove the FF&E; (b) use reasonable efforts to cause Company employees to cooperate with Hilco FF in connection with the sale, disposition and removal process; (c) obtain all consents from third parties, including landlords and secured creditors, required in connection with the sale, disposition, and/or removal of the FF&E; (d) provide Hilco FF with use of all personal and freight elevators and loading docks within the Location(s) for purposes of selling, disposing of, and/or removing the FF&E; (e) provide Hilco FF with use of all material handling equipment, including (without limitation) all forklifts, flat bed carts, pallet jacks, and lifts, in each case if any and if present at the Location(s); and (f) pay and provide all occupancy services at the Location(s), which shall include, but shall not be limited to, rent (including CAM, real estate taxes, etc.), alarm systems, and utilities (including electricity, water, telephone, and temperature control).

11. The Company represents and warrants that the Location(s) and the FF&E do not contain any environmental hazards, toxic waste, or other types of hazardous materials or substances (collectively, "HAZMAT"), and that Company shall be solely responsible and liable for storage, remediation and/or removal of all HAZMAT, including specifically the

removal of any Freon from the Location(s) and any item of FF&E, on a timeline to be agreed upon by the parties. The Company shall indemnify and hold Hilco FF and its members, managers, partners, directors, officers, employees, attorneys, advisors, subcontractors, agents, representatives, lenders, and affiliates (the "Hilco FF Parties") harmless from any claim, demand, suit, cost, expense, obligation or liability arising from or related to any HAZMAT at the Location(s) or in or associated with any item of FF&E.

12. During the Term, (i) Hilco FF agrees to maintain commercial general liability and other insurance policies, in amounts and upon such terms as are no less favorable than those currently in effect, and will produce a certificate of insurance regarding same within fourteen (14) days of the date hereof, and (ii) Company agrees to maintain commercial general liability and other insurance policies, in amounts and upon such terms as are no less favorable than those currently, and will produce a certificate of insurance regarding same within fourteen (14) days of the date hereof.

13. Hilco FF represents that it and its employees are independent contractors and should not be considered agents, employees of or joint venture partners with the Company.

14. Subject to entry of the Sale Approval Order, Hilco FF is authorized to advertise the resale of the FF&E, including hanging interior and exterior signs and banners at the Location(s), and otherwise market the sale of the FF&E in a manner consistent with this Agreement, and the Company hereby authorizes Hilco to use the Company's trademarks and trade names in all advertisements related to the sale of FF&E.

15. All notices provided for herein shall be sent by fax, email, or by recognized overnight delivery service as follows: (a) To Company: [address, email, contact name]; (b) To Hilco FF: Hilco Fixture Finders, LLC, 5 Revere Drive, Suite 206, Northbrook, Illinois 60062, Email: rlawlor@hilcoglobal.com, with a copy to: Hilco Merchant Resources, LLC, 5 Revere Drive, Suite 206, Northbrook, Illinois 60062, Fax: 847-897-0859, Email ifredericks@hilcoglobal.com, Attn: Ian S. Fredericks; or (c) such other address as may be designated in writing by the Company or Hilco FF.

16. This Agreement constitutes the entire agreement between the Parties regarding the subject matter hereof and supersedes all prior agreements and proposals (written or oral). This Agreement may be executed in one or more counterparts, which may be transmitted by email as a PDF or otherwise or facsimile, and each of which shall constitute an original. This Agreement, and its validity, construction and effect, shall be governed by and enforced in accordance with the internal laws of the State of Michigan (without reference to the conflicts of laws provisions therein). The Company and Hilco FF waive their respective rights to trial by jury of any cause of action, claim, counterclaim or cross-complaint in any action, proceeding and/or hearing brought by either Hilco FF against the Company or the Company against Hilco FF on any matter whatsoever arising out of, or in any way connected with, this Agreement, the relationship between the Company and Hilco FF, any claim of injury or damage or the enforcement of any remedy under any law, statute or regulation, emergency or otherwise, now or hereafter in effect.

A Hilco Global Company
Vested in Your Success

If the foregoing meets with your approval, kindly execute this Agreement in the space provided and return the same via email to _____@_____.com.

HILCO FIXTURE FINDERS, LLC       BILLNAT CORPORATION

_____   _____

By:                                 By:
Its:                                  Its:
Date:                               Date:

Exhibit A

List of Locations

| | | | | | Term End Date |
|---|---|---|---|---|---|
| 3 | 29436 FORD RD | GARDEN CITY | MI | 48135 | 2/28/18 |
| 4 | 5688 N TELEGRAPH RD | DEARBORN HEIGHTS | MI | 48127 | 2/28/18 |
| 5 | 43500 VAN DYKE RD | STERLING HEIGHTS | MI | 48314 | 2/28/18 |
| 9 | 20145 ANN ARBOR TRL | DEARBORN HEIGHTS | MI | 48127 | 2/28/18 |
| 11 | 6427 ORCHARD LAKE RD | WEST BLOOMFIELD | MI | 48322 | 2/28/18 |
| 12 | 24100 MEADOWBROOK RD, SUITE A | NOVI | MI | 48375 | 2/28/18 |
| 14 | 22981 HALL RD | WOODHAVEN | MI | 48183 | 2/28/18 |
| 15 | 11912 WHITMORE LAKE RD | WHITMORE LAKE | MI | 48189 | 2/28/18 |
| 18 | 20352 HARPER AVE | HARPER WOODS | MI | 48225 | 3/31/18 |
| 19 | 190 S WAYNE RD | WESTLAND | MI | 48186 | 2/28/18 |
| | 13101 Allen Road | SOUTHGATE | MI | 48195 | 3/31/18 |
| Corporate Office | 34550 GLENDALE ST. | LIVONIA | MI | 48150 | 3/31/18 |

A Hilco Global Company

Exhibit B

List of FF&E

{7167631: }

 A Hilco Global Company
Vested in Your Success

## <u>Exhibit C</u>

## Vehicles

| Make | Model | Year | VIN | Color |
|------|-------|------|-----|-------|
| Ford | Fusion | 2012 | 3FAP0JG1CR191965 | Burgundy |
| Ford | Escape | 2011 | 1FMCU0DG1BKB90161 | Silver |
| Kia | Spectra | 2007 | KNAFE121475424962 | Beige |